UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HAMED ADILOVIC,

                Plaintiff,

- against -

THE COUNTY OF WESTCHESTER,
WESTCHESTER COUNTY
DEPARTMENT OF CORRECTION,
WESTCHESTER COUNTY
DEPARTMENT OF CORRECTION
EMERGENCY SERVICE UNIT, and
"JOHN DOES 1-10,"

                Defendants.

**MEMORANDUM OPINION
& ORDER**

08 Civ. 10971 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

        Plaintiff Hamed Adilovic brings this suit under 42 U.S.C. § 1983, alleging that correction officers beat and harassed him while he was incarcerated at Westchester County Jail. Originally represented by counsel, Adilovic has proceeded pro se since this Court's January 19, 2010 order granting attorney Robert Epstein's application to withdraw as counsel. (Dkt. No. 27) Defendant County of Westchester (the "County")[1] has moved for summary judgment.[2] Adilovic

---

[1] The County of Westchester is also sued as the Westchester County Department of Correction and the Westchester County Department of Correction Emergency Service Unit, but the latter two defendants are not legal entities distinct from the County of Westchester. See Baptista v. Onondaga Cnty. Dep't of Corr., No. 9:04-cv-0600 (LEK/GHL), 2007 WL 911854, at *5 (N.D.N.Y. Mar. 22, 2007) ("These two entities [the Onondaga County Department of Corrections and the County of Onondaga] are one in the same – the County of Onondaga, a municipal corporation of the State of New York." (citing Solis v. County of Westchester, No. 94 Civ. 5102(VLB), 1995 WL 14072, at *1 (S.D.N.Y. Jan. 10, 1995) (noting that the Westchester County Department of Corrections is not a legal entity and that the County of Westchester is the real party in interest))). No John Doe defendants have been identified or served.

[2] The County served on Adilovic the notice required by Local Rule 56.2. (Dkt. No. 31)

has submitted a "Notice of Motion for Summary Judgment" that the Court will treat as both an opposition to Defendant's motion and Plaintiff's own motion for summary judgment.[3]

For the reasons set forth below, Adilovic's motion for summary judgment will be denied, and the County's motion for summary judgment will be granted.

## BACKGROUND

On September 18, 2007, two New York State Police troopers on patrol observed a Dodge van moving outside the lane of traffic. The van then ran a red light on State Route 9 in Cortlandt, New York. (Def. R. 56.1 Stat. ¶ 1[4]; see also Wenzel Decl.,[5] Ex. C (December 17, 2008 trial transcript in People v. Adilovic at 9, 16) The troopers activated their cruiser's overhead lights and siren, and the driver – Plaintiff Adilovic – pulled over. (Ex. C at 10) After approaching the vehicle, the troopers noted that Adilovic's breath smelled of alcohol, his speech was slurred, and his eyes were bloodshot and watery. Adilovic – whose license was suspended –

---

[3] A pro se litigant "is given special latitude in responding to a summary judgment motion[, and] [c]ourts must 'liberally construe pleadings and briefs submitted by pro se litigants, reading such submissions 'to raise the strongest arguments they suggest.'" Covington v. Westchester Cnty. Dep't of Corr., No. 06 Civ. 5369(WHP), 2010 WL 572125, at *4 (S.D.N.Y. Jan. 25, 2010) (citations omitted) (quoting Bertin v. United States, 478 F.3d 489, 491 (2d Cir. 2007)).

[4] To the extent that this Court relies on facts drawn from the Defendant's Rule 56.1 Statement, it has done so because Plaintiff has either not disputed those facts or has not done so with citations to admissible evidence. See Giannullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003) ("If the opposing party . . . fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted." (citations omitted)).

Because Plaintiff is proceeding pro se, the Court has conducted an independent review of the evidence in the record. At summary judgment, the Court is entitled to rely on "pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . affidavits." Fed. R. Civ. P. 56. The Court has considered only evidence that would be admissible at trial, however. Feingold v. New York, 366 F.3d 138, 155 n.17 (2d Cir. 2004).

[5] All exhibits referenced below are attached to the Wenzel Declaration (Dkt. No. 31).

also stumbled while exiting his vehicle. (Def. R. 56.1 Stat. ¶ 2; Ex. C at 16-19) The troopers conducted field sobriety tests, which Adilovic failed. (Def. R. 56.1 Stat. ¶ 4; Ex. C at 19, 26) Adilovic resisted the troopers' efforts to handcuff him, and they pinned him against the hood of the police car and forced him to the ground.[6] (Def. R. 56.1 Stat. ¶ 5; Ex. C at 27-30; Ex. D (December 18, 2008 trial transcript in People v. Adilovic) at 49-51; Ex. F (Adilovic deposition transcript) at 113-15) Adilovic suffered a bruised knee and several scrapes to the face during the altercation, but refused medical treatment. (Def. R. 56.1 Stat. ¶¶ 6, 8; Ex. D at 54-55, 98-99; Ex. C at 31) A breathalyzer test administered to Adilovic that night revealed a blood alcohol content of 0.26 percent.[7] (Def. R. 56.1 Stat. ¶ 7; Ex. C at 59)

        Adilovic was charged with resisting arrest, disorderly conduct, driving while intoxicated, aggravated driving while intoxicated, and aggravated unlicensed operation of a motor vehicle in the third degree. Bail was set at $2,500. (Def. R. 56.1 Stat. ¶ 9; Ex. G (criminal court commitments and bail receipt) at 000031) Adilovic did not post bond. Accordingly, troopers transported him to the Westchester County Department of Correction ("WCDOC") in Valhalla, where he arrived at 12:28 a.m. on September 19, 2007. (Def. R. 56.1 Stat. ¶ 11; Ex. E (Section 50(h) of New York General Municipal Law hearing transcript) at 64-65; Ex. H (intake documents) at 000032)

---

[6] Adilovic alleges that the officers, in forcing him to the ground, broke his nose, his legs, his neck, and his spine. (Def. R. 56.1 Stat. ¶ 6; Ex. D at 73; Ex. F at 112) As discussed below, there is no evidence supporting Adilovic's claim that he suffered serious physical injury. (See Ex. I (Westchester Medical Center records referencing superficial lacerations on nose, right cheek, and left knee))

[7] Under New York law, "operat[ing] a motor vehicle while [a] person has .18 of one per centum or more by weight of alcohol in such person's blood" constitutes per se "aggravated driving while intoxicated." VEH. & TRAF. § 1192(2-a).

A nurse practitioner conducted a medical examination of Plaintiff when he arrived at the WCDOC. (Def. R. 56.1 Stat. ¶ 13) An intake form completed by the nurse at that time indicates that Adilovic was not suffering pain. (Ex. I (WCDOC medical records) at 000056) Adilovic's general appearance, head, neck, abdomen, and gait were all described as normal, except for superficial abrasions on his face and left knee. (Id.)

On September 21, 2007, Adilovic appeared for a court hearing. (Def. R. 56.1 Stat. ¶ 15; Ex. G at 000030) At the hearing, Adilovic began to shake and sweat, and a psychiatric evaluation was ordered when he returned to the WCDOC. (Def. R. 56.1 Stat. ¶ 16; Ex. K (Re-book Risk Assessment) at 000047-48; Ex. I at 000058) A nurse practitioner determined that he was experiencing "borderline functioning" and anxiety, and officials placed him in a special housing unit; the nurse also noted, however, that he was not in any physical distress. (Def. R. 56.1 Stat. ¶ 17; Ex. I at 000058; Ex. J (Booking Summary Report) at 00004; Ex. R (Housing History)) Adilovic claims to have witnessed three rapes that night. (Ex. F at 138-40, 144)

On September 22, 2007, at approximately 12:50 p.m., correction officers noted that Adilovic appeared mentally disturbed and extremely nervous. He was standing on his bed with a torn bed sheet tied around his waist. (Def. R. 56.1 Stat. ¶ 18; Ex. L (Sept. 22, 2007 WCDOC reports) at 00009) He declared: "They're all going to kill me." (Def. R. 56.1 Stat. ¶ 18; Ex. L at 00009) Adilovic indicated that he wanted to speak with medical personnel. (Def. R. 56.1 Stat. ¶ 19; Ex. L at 00009) When Adilovic stepped out of his cell, however, "suddenly his facial features and demeanor became very paranoid and nervous." (Def. R. 56.1 Stat. ¶ 20; Ex. L at 000010) Adilovic flailed his arms and yelled, "They're trying to kill me!" (Def. R. 56.1 Stat. ¶ 20; Ex. L at 000010) He ignored a correction officer's order to return to his cell, and the

4

officer signaled for assistance. The WCDOC Emergency Response Team ("ERT") responded and used force to secure Adilovic, including a one-second burst of pepper spray from four to six feet away.[8] (Def. R. 56.1 Stat. ¶ 25; Ex. L at 00006-08; Ex. M (Video of Sept. 22, 2007 ERT interaction with Adilovic) at 7:55) Officers then escorted Adilovic to a shower for decontamination. (Def. R. 56.1 Stat. ¶ 27; Ex. L at 00007; Ex. M at 9:38) A nurse then examined Adilovic, finding that he appeared nervous and paranoid and had several superficial self-inflicted scrapes on his hand. (Def. R. 56.1 Stat. ¶ 30) The nurse requested that Adilovic be placed on suicide watch. (Id.; Ex. L at 000015-17) The nurse also indicated that no further medical treatment was necessary at that time. (Ex. M at 18:38)

At his deposition, Adilovic testified that after being sprayed with pepper spray and put in the shower on September 22, 2007, he fell into a coma and recalled nothing until waking up in the hospital five days later. (Ex. F at 160-64, 173, 178) Adilovic claims that he was given "poison three times a day in the time when [he witnessed the] rap[es]," and that it was this "poison" that put him into a coma. (Ex. F at 175)

On September 23, 2007, a doctor found that Adilovic was "totally incoherent, tremulous, diaphoretic, clearly disorientated," and "in an acute delirium." (Def. R. 56.1 Stat. ¶ 32; Ex. I at 000065) Adilovic was then transferred to the Westchester Medical Center ("WMC") for further evaluation. (Def. R. 56.1 Stat. ¶ 32; Ex. I at 000067; Ex. O (Sept. 23, 2007 WCDOC reports) at 18, 19; Ex. P (Video of Sept. 23, 2007 ERT interaction with Adilovic)) When Adilovic arrived at the WMC, the examining doctor found him "confused and disoriented" and in an altered mental state; the only physical injuries the doctor noted were "[m]ultiple abrasions

---

[8] A correction officer completed an "Oleoresin Capsicum Aerosol Report" detailing the use of the pepper spray. (Ex. L at 00008)

5

over the bony prominences[, including] knuckles [and] knees." (Def. R. 56.1 Stat. ¶ 36; Ex. I at 000081)  While in the WMC emergency room, Adilovic attempted to remove his restraints and kick, elbow, and bite two correction officers.  (Def. R. 56.1 Stat. ¶ 37)  He was given a sedative. (Ex. Q (Sept. 23, 2007 special report by Correction Officer Portella) at 000021)  Adilovic was kept under observation for five hours and was diagnosed as suffering from alcohol withdrawal (Def. R. 56.1 Stat. ¶¶ 32, 36, 38; Ex. I at 000086); he was placed in an off-ward room at the WMC and admitted to a six-day librium detoxification program.[9]  (Ex. J at 00005; Ex. I at 000068)  Adilovic was transferred to Ward 29, the jail infirmary in the WMC, on September 26, 2007.  (Def. R. 56.1 Stat. ¶ 39; Ex. J at 00005)

Adilovic remained in custody until October 5, 2007, when bail was posted.  (Def. R. 56.1 Stat. ¶¶ 40-43; Ex. G at 24; Ex. R)

Adilovic filed this lawsuit on December 17, 2008, alleging violations of 42 U.S.C. § 1983.  On June 9, 2009, this Court granted the County's motion to dismiss, finding that the Complaint was unintelligible and failed to apprise Defendants of the nature of Plaintiff's claim, in violation of Fed. R. Civ. P. 8.  (Dkt. No. 12)  Dismissal was granted with leave to amend (id.), and Adilovic's counsel filed an Amended Complaint on June 29, 2009.[10]  (Dkt. No. 15)  On November 23, 2010, the County moved for summary judgment.  (Dkt. No. 31)

---

[9] Librium is administered to address the anxiety and agitation associated with alcohol withdrawal.  See Chlordiazepoxide: MedlinePlus Drug Information, U.S. NAT'L LIBR. MED., http://www.nlm.nih.gov/medlineplus/druginfo/meds/a682078.html (last visited July 13, 2011).

[10] Adilovic was represented by counsel when both the Complaint and Amended Complaint were filed.

# DISCUSSION

## I.  LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact" and one party "is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." Beyer v. County of Nassau, 524 F.3d 160, 163 (2d Cir. 2008). "'[W]here the nonmoving party will bear the burden of proof at trial, Rule 56 permits the moving party to point to an absence of evidence to support an essential element of the nonmoving party's claim.'" Longview Equity Fund, L.P. v. iWorld Projects & Sys., Inc., No. 05 Civ. 6745(RJS), 2008 WL 833230, at *2 (S.D.N.Y. Mar. 26, 2008) (quoting Bay v. Times Mirror Magazines, Inc., 936 F.2d 112, 116 (2d Cir. 1991)).

A court deciding a summary judgment motion must "'resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment.'" Spinelli v. City of New York, 579 F.3d 160, 166 (2d Cir. 2009) (quoting Brown v. Henderson, 257 F.3d 246, 251 (2d Cir. 2001)). However, a "'party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment. . . .[M]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist.'" Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (alterations in original) (quoting Fletcher v. Atex, Inc., 68 F.3d 1451, 1456 (2d Cir. 1995)).

## I  THE COUNTY IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S EXCESSIVE FORCE CLAIM

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, which provides: "Every person who, under color of any statute . . . subjects, or causes to be subjected, any citizen of the

7

United States or other person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . ."

While the Amended Complaint does not specify what constitutional or statutory rights were allegedly violated, Adilovic appears to claim that he was the victim of excessive force while incarcerated as a pretrial detainee, in violation of the Due Process Clause of the Fourteenth Amendment.

### A. Applicable Law

Section 1983 imposes liability on individuals who, while acting under color of state law, deprive a plaintiff of a federal right. See Gomez v. Toledo, 446 U.S. 635, 640 (1980). "A pretrial detainee who is subjected to excessive force may bring a claim under § 1983." Cunningham v. Rodriguez, No. 01 Civ. 1123 (DC), 2002 WL 31654960, at *4 (S.D.N.Y. Nov. 22, 2002). Because the Eighth Amendment's protection from cruel and unusual punishment does not apply "'until after conviction and sentence,' the right of pretrial detainees to be free from excessive force amounting to punishment is protected by the Due Process Clause of the Fourteenth Amendment." United States v. Walsh, 194 F.3d 37, 47 (2d Cir. 1999) (quoting Graham v. Connor, 490 U.S. 386, 392 n.6 (1989)). However, "[t]he Second Circuit applies the same standard to excessive force claims brought under the Fourteenth Amendment as under the Eighth Amendment." Virella v. Pozzi, No. 05 Civ. 10460(RWS), 2006 WL 2707394, at *3 (S.D.N.Y. Sept. 20, 2006).

"To establish a constitutional violation, and hence a claim pursuant to section 1983, a plaintiff must meet both a subjective and an objective requirement." Id. "Subjectively, the plaintiff must demonstrate that the defendant acted wantonly. The essential question is

'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Id. (quoting Hudson, 503 U.S. at 7); see also Sims v. Artuz, 230 F.3d 14, 21 (2d Cir. 2000). Force is not wanton when it is minimal and employed for the purpose of subduing a prisoner. See, e.g., Allaway v. McGinnis, 473 F. Supp. 2d 378, 382-83 (W.D.N.Y. 2007) (four punches that officer delivered as "'softening blows' administered for the sole purpose of getting plaintiff to comply with the officers [sic] orders" not wanton); Boomer v. Lanigan, No. 00 Civ. 5540, 2002 WL 31413804, at *6 (S.D.N.Y. Oct. 25, 2002) (not wanton when officers used "minimal force" in pushing plaintiff into holding cell "after holding him in place for several minutes in an effort to settle him down").

For the objective inquiry, "the plaintiff must show that the violation is 'sufficiently serious or harmful.'" Virella, 2006 WL 2707394, at *3 (quoting Walsh, 194 F.3d at 50). The objective inquiry is "context specific, turning upon 'contemporary standards of decency.'" Blyden, 186 F.3d at 263 (quoting Hudson, 503 U.S. at 8). Offense to decency, rather than severity of the injury, is dispositive: "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. . . . whether or not significant injury is evident." Hudson, 503 U.S. at 9. A de minimis injury may satisfy the objective portion of the excessive force inquiry because "certain actions, including the malicious use of force to cause harm, constitute Eighth Amendment violations per se." Blyden, 186 F.3d at 263. However, it is rare that de minimis force will be a constitutional violation. See Sims, 230 F.3d at 21 ("the Eighth Amendment's prohibition against cruel and unusual punishment does not extend to 'de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind'" (quoting Hudson, 503 U.S. at 10)). "'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a

9

prisoner's constitutional rights.'" Hudson, 503 U.S. at 9 (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)). "'[T]he key inquiry under Hudson and its precedents is whether the alleged conduct involved unnecessary and wanton infliction of pain.'" Sims, 230 F.3d at 21 (quoting Davidson v. Flynn, 32 F.3d 27, 30 (2d Cir. 1994)).

Where a plaintiff cannot satisfy either the objective or subjective component of an excessive force claim, the defendant is entitled to summary judgment. See Cunningham v. Rodriguez, No. 01 Civ. 1123 (DC), 2002 WL 31654960, at *1, *5 (S.D.N.Y. Nov. 22, 2002) (granting summary judgment where "plaintiff [was] unable to satisfy either the objective or subjective prong of the Hudson excessive force test").

**B.** **Analysis**

Summary judgment is warranted here because Adilovic has not established a material issue of fact as to either the subjective or objective elements of an excessive force claim.

As to the first element, Adilovic has not shown that the force used was subjectively "characterized by 'wantonness,'" Wright, 554 F.3d at 268, in that officers applied it "maliciously and sadistically to cause harm." Sims, 230 F.3d at 21 (quoting Hudson, 503 U.S. at 7). Summary judgment is proper when a plaintiff's claim is "lacking . . . any evidence that the ERT officers acted wantonly in an attempt to maliciously or sadistically cause plaintiff injury, or that the force was not applied in good faith to maintain or restore discipline." Gashi v. County of Westchester, No. 02 Civ. 6934 (GBD), 2007 WL 749684, at *8 (S.D.N.Y. Mar. 12, 2007). The undisputed facts here demonstrate that Adilovic was suffering from delirium caused by alcohol withdrawal; that he ignored a correction officer's instruction to return to his cell; that officers subdued him as part of an effort to provide the medical treatment that Adilovic had requested and needed; and that force "was applied in a good-faith effort to maintain or restore discipline":

> As I approached his cell, inmate Adilovic was standing on his bed, blue piece of linen tied around his waist, saying "They're all going to kill me." . . . I asked inmate Adilovic if he would like to go to the clinic and speak to a medical professional, to which he replied "yes." . . . At first, inmate Adilovic exited his cell peacefully, but suddenly his facial features and demeanor became very paranoid and nervous. Seeing this, I ordered him back into his cell. Inmate Adilovic did not appear to acknowledge my order and began to flail his arms into the air yelling, "They're trying to kill me." At this point it became necessary for officers Lopez, Jarvis, and myself to restrain him. Simultaneously, Officer Hunt called in a Code "Signal-13." ERT responded and further secured inmate Adilovic and locked him back into his cell.

(Ex. L at 000010; see also Def. R. 56.1 Stat. ¶¶ 18-21)

Adilovic does not deny that he resisted the officers outside his cell (see Ex. F at 150-52 (explaining that when correction officers came to his cell, Adilovic used martial arts techniques[11] after officers grabbed his hands)), and videos of the incident confirm that only minimal force was used. (See Ex. M at 7:55 (ERT forcing Adilovic to the floor to secure him after non-compliance with instructions), 9:38 (ERT putting Adilovic in shower for decontamination)) The "soft hand techniques" and one-second administration of pepper spray[12] used here to ensure the compliance of an uncooperative, delirious inmate are not "repugnant to

---

[11] Adilovic has a black belt in karate, judo, and other martial arts, and claims to have served in a military special forces unit. (Ex. F at 94, 151-52)

[12] The use of pepper spray "constitutes a significant degree of force," Tracy v. Freshwater, 623 F.3d 90, 98 (2d Cir. 2010), and can amount to an excessive use of force. United States v. Praisner, No. 3:09cr264 (MRK), 2010 WL 2574103 (D. Conn. Apr. 27, 2010) (denying motion to dismiss indictment premised on excessive force where pretrial detainee "was sprayed six times on four separate occasions over approximately 40 minutes, and was not decontaminated during that period"). As with any use of force, however, so long as the force is "'applied in a good-faith effort to maintain or restore discipline,'" Sims, 230 F.3d at 21 (quoting Hudson, 503 U.S. at 7), it is unlikely to be repugnant to the conscience of mankind, and will not amount to excessive force under Second Circuit law. See Kopy v. Howard, Civ. No. 9:07-CV-417 (DNH/RFT), 2010 WL 3808677, at *3 (N.D.N.Y. Aug. 11, 2010) ("Thus, by Plaintiff's own admission, he refused several direct orders to return to his cell and, as a consequence, was forcibly moved there by use of pepper spray. There being absolutely no evidence or indication of bad faith on the part of Defendants, this claim must fail.").

11

the conscience of mankind," see Gashi, 2007 WL 749684, at *6, and were in compliance with WCDOC Policy and Procedure guidelines. (See Ex. N (WCDOC policy and procedure for use of chemical agents) at ¶ E(2)-(3) ("The use of [pepper spray] is a force option following verbal and soft hand compliance tactics on the use of force continuum. [Pepper spray] may be used when verbal dialogue has failed to bring about the subject's compliance and the subject has signaled his intention to actively resist the officer.")) In these circumstances, no reasonable jury could conclude that the correction officers acted maliciously or sadistically to cause Adilovic harm.

Adilovic has likewise not satisfied the objective prong of the excessive force inquiry, in which he must "show that the violation is 'sufficiently serious or harmful.'" See Virella, 2006 WL 2707394, at *3 (quoting Walsh, 194 F.3d at 50). Although "plaintiff need not show a significant injury[,] . . . he must come forward with more than a de minimis use of force." James v. Phillips, No. 05 Civ. 1539(PKC)(KNF), 2008 WL 1700125, at *5 (S.D.N.Y. Apr. 9, 2008). Adilovic claims that his nose was broken (Ex. F at 158), and that the arresting officers broke his back (Ex. D at 73), but these claims are not supported by the medical evidence. (Ex. I) The medical evidence indicates that Adilovic had "very superficial scattered abraded areas which were cleaned during decontamination," and that no further medical treatment was necessary. (Ex. I at 000059-60; Ex. M (Video of Sept. 22, 2007 ERT interaction with Adilovic) at 18:38 (nurse medically clearing Adilovic and noting only minor scrapes)) This Court finds that the use of force used to subdue Adilovic and the resulting scrapes were de minimis. See, e.g., James, 2008 WL 1700125, at *4-5 (finding de minimis use of force and granting summary judgment when prison guard shoved inmate into a door which resulted in swelling of inmate's chin); Yearwood v. LoPiccolo, No. 95 CIV. 2544(DC), 1998 WL 474073, at *7 (S.D.N.Y. Aug. 10,

1998) (choking plaintiff, hitting his head with a pair of keys, and punching him in the lip constituted de minimis force); Bove v. New York City, No. 98 Civ. 8800 (HB), 1999 WL 595620, at *6 (S.D.N.Y. Aug. 6, 1999) (finding de minimis use of force and granting summary judgment when plaintiff's only injury supported by evidence was single bruise to head); DeArmas v. Jaycox, No. 92 Civ. 6139 (LMM), 1993 WL 37501, at *4 (S.D.N.Y. Feb. 8, 1993) (finding de minimis use of force when plaintiff was punched once and kicked once).

Minor injuries may satisfy the objective portion of the excessive force inquiry where the use of force is "repugnant to the conscience of mankind."[13] Sims, 230 F.3d at 21 (further stating that "'[t]he key inquiry under Hudson and its precedents is whether the alleged conduct involved unnecessary and wanton infliction of pain.'" (quoting Davidson, 32 F.3d at 30)).  Here, the force that inflicted superficial scrapes on Adilovic is not "repugnant to the conscience of mankind," given that the officers' actions were in response to Adilovic's refusal to obey orders, shouting, and flailing of arms.  See Barratt v. Joie, No. 96 Civ. 0324 (LTS)(THK), 2002 WL 335014, at *10 (S.D.N.Y. Mar. 4, 2002) (single kick without evidence of significant injury not repugnant); Cunningham v. Rodriguez, 2002 WL 31654960, at *5 (not repugnant where officers struck plaintiff's face and back and wrestled plaintiff to the ground after plaintiff used profanity and refused to leave courtroom); Santiago v. C.O. Campisi Shield # 4592, 91 F. Supp. 2d 665, 674 (S.D.N.Y. 2000) (open-handed slap in the face not repugnant).

Adilovic's uncorroborated claims that he suffered a forceful beating that caused severe injuries are not supported by any evidence, and cannot alone defeat summary judgment. See Gashi, 2007 WL 749684, at *6 (finding plaintiff did not demonstrate excessive force because

---

[13] This is because "'[i]n the excessive force context, society's expectations are different.  When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated.'"  Sims, 230 F.3d at 21 (quoting Hudson, 503 U.S. at 9).

13

"[t]he record is barren of any evidence to support plaintiff's claims as to the brutal and savage nature of the alleged assault, and the severity of the injuries he purportedly sustained. Plaintiff's assertion that he suffered injuries all over his body, was actively bleeding, and was in a weakened and confused state is at odds with his physical appearance and demeanor, as depicted on the videotape taken within hours after the subject incident. Other than plaintiff's reddened eyes, there [are] no visible signs of injury."). Because "'plaintiff cannot demonstrate that the force was anything other than de minimis, . . . summary judgment is warranted notwithstanding the parties' disagreement as to the underlying facts. . . . To defeat a motion for summary judgment, plaintiff must provide the Court with some basis to believe that his version of relevant events is not fanciful.'" Id. (quoting Yearwood, 1998 WL 474073, at *3); see also Bove, 1999 WL 595620, at *6 ("Given the conflicting accounts of what exactly happened outside of defendant Blinn's door in the early morning of December 18, 1995 – the plaintiff's allegations of a brutal beating versus the defendants' view that no such incident took place – it might appear at first blush that this factual dispute would preclude summary judgment. However, the plaintiff's alleged injuries that are supported by the objective hospital records lead me to conclude that, as a matter of law, the force – if any – used by the NYPD on the night in question was at worst, de minimis, and insufficient to shock this Court's conscience."). The County is entitled to summary judgment on Adilovic's excessive force claim.[14]

---

[14] While Adilovic does not claim that he was raped, he alleges that he "witness[ed] multiple rapes in adjacent and nearby cells" (Am. Cmplt. ¶ 36; Ex. F at 144 ("Q: Were you raped that night? A: No, I was not raped.")) Adilovic also claims that he was "verbally threatened and harassed by a uniformed correction officer assigned to the area." (Am. Cmplt. ¶ 37) To the extent that these allegations could be viewed as claimed violations of federal rights, they are barred under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(e). Under the PLRA, "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior

### C.     <u>Municipal Liability Has Not Been Established</u>

Even if Adilovic had succeeded in demonstrating excessive force, he has not made out a basis for municipal liability. Municipal liability under Section 1983 requires proof that a particular constitutional or statutory violation was the result of an official policy; "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983." <u>Monell v. Department of Social Services of City of New York</u>, 436 U.S. 658, 694 (1978). The Second Circuit has explained that a plaintiff "must first prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving officers. Second, the plaintiff must establish a causal connection – an 'affirmative link' – between the policy and the deprivation of his constitutional rights." <u>Vippolis v. Village of Haverstraw</u>, 768 F.2d 40, 44 (2d Cir. 1985).

Where a plaintiff can show only "misbehaving officers," <u>id.</u>, but has not offered proof of an official policy that led to the constitutional or statutory violation, his claim must fail. <u>Turpin v. Mailet</u>, 619 F.2d 196, 203 (1980) (reversing jury verdict against City in Section 1983 action where plaintiff "fail[ed] to prove any official policy"). Here, the record contains no evidence of an official policy authorizing, sanctioning, encouraging, or promoting the use of excessive force against inmates; rather, even if Adilovic's claims rose to the level of a

---

showing of physical injury." <u>Thompson v. Carter</u>, 284 F.3d 411, 416 (2d Cir. 2002). Here, "there are no medical records, doctors' notes, treating providers' affidavits, or any other piece of evidence in the record to support" a claim of mental suffering, <u>see</u> <u>Crowell v. Kirkpatrick</u>, 667 F. Supp. 2d 391, 408 n.14 (D. Vt. 2009), nor is there any evidence of concomitant physical injury as required by the PLRA. Accordingly, to the extent these allegations could be read as pleading a separate claim, summary judgment for the County on these claims is appropriate.

constitutional violation, they indicate only "a single incident of unconstitutional activity [which] is not sufficient to impose liability under Monell." City of Oklahoma City v. Tuttle, 471 U.S. 808, 841 (1985); see also Bove, 1999 WL 595620, at *7 ("'[a] single incident alleged in a complaint, especially if it involved only actors below the policymaking level, generally will not suffice to raise an inference of the existence of a custom or policy.'" (quoting Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993))).

### D. Plaintiff's State Law Claims Will Be Dismissed

Because summary judgment on Adilovic's federal claim will be granted, any pendant state law claims that may be construed from Adilovic's complaint, such as assault, negligence, or intentional infliction of emotional distress, will be dismissed as well. See Grondahl v. Merritt & Harris, Inc., 964 F.2d 1290, 1294 (2d Cir. 1992) ("'[c]ertainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.'" (quoting United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966))); Murray v. Ramineni, No. 08–CV–809 (DNH/DRH), 2011 WL 1315777, at *24 (N.D.N.Y. Mar. 3, 2011) ("to the extent that [plaintiff] is attempting to bring a state law claim for intentional infliction of emotional distress, such claims are inappropriate to decide here" after dismissal of federal claims).

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is DENIED, and Defendants' motion for summary judgment is GRANTED. The Clerk of the Court is directed to terminate the motion (Dkt. No. 31) and to close this case, and to mail a copy of this order via certified mail to Hamed Adilovic, 110 Genesee St., Apt. 601, Utica, NY 13502.

Dated: New York, New York
      July 14, 2011

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge